**Findley v Cardiff Bay Ctr., LLC**

2025 NY Slip Op 32310(U)

June 26, 2025

Supreme Court, Kings County

Docket Number: Index No. 501728/2021

Judge: Anne J. Swern

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Trial Term, Part 75 of the
Supreme Court of the State of New York,
Kings County, at the Courthouse located at
360 Adams Street, Brooklyn, New York on
the 26th day of June 2025

P R E S E N T: HON. ANNE J. SWERN, J.S.C.

DALTON FINDLEY,

                     *Plaintiff(s),*

-against-

CARDIFF BAY CENTER, LLC d/b/a PENINSULA
NURSING AND REHABILITATION CENTER,

                     *Defendant.*

**DECISION & ORDER**

Index No.:    501728/2021

Calendar No.: 19

Motion Seq.:  003

*Recitation of the following papers as required by CPLR 2219(a):*

                                                          **Papers
Numbered**

Notice of Motion, Affirmation, and Exhibits (NYSCEF 29-43) ......................1, 2
Affirmation and Exhibits in Opposition (NYSCEF 46-54) .................................3
Reply Affirmation and Exhibits (NYSCEF 56-57)...............................................4

*Upon the foregoing papers and after oral argument, the decision and order of the Court*

*is as follows:*

**Introduction**

      Plaintiff commenced this action for personal injuries arising out of an accident

while admitted to defendant's facility. The complaint alleges four causes of actions. The

first and fourth cause of action seek compensatory and punitive damages under Public

Health Law § 2801-d [2] and attorney's fees pursuant to § 2801-d [6]. Defendant has

now moved for summary judgment dismissing the plaintiff's claims for violations of the

Public Health Law.

**Facts**

Plaintiff was admitted to Long Island Jewish Valley Stream/Northwell Health (LIJ) hospital for 11 days before being transferred and admitted to defendant's facility on 1/11/2019. He was admitted to LIJ due to an episode of syncope, *i.e.*, plaintiff felt lightheaded, passed out and upon awakening, he felt confused. Plaintiff was classified as "High Risk of Falling" upon entering defendant's facility and was demonstrating difficulty rising from a chair unassisted by holding the chair's arms and could not walk unassisted (NYSCEF 41). Plaintiff testified that he experienced dizziness upon standing (NYSCEF 36 [p.118], Tr. p.117, 3-12). He also experienced dizziness and tremors in his hand which prevented him from feeding himself without assistance (NYSCEF 36 [pp.144-145], Tr. pp.143-144). Plaintiff also needed assistance with bed mobility, transfers, walking, dressing, bathing and personal hygiene (NYSCEF 41, pp.139-147).

The defendant's "Hourly Resident Room Check" records for the 11:00 P.M. to 7:00 A.M. shift starting on 11/15/2019 documents that plaintiff was in bed at 1:00 A.M. on 1/16/2019. (NYSCEF 53, p.10). At 1:10 a.m., plaintiff was found lying on the floor on his back next to his bed. According to defendant's accident report, plaintiff stated that "I don't know how I got on the floor. I was sleeping" (NYSCEF 53). As a result of the accident, plaintiff sustained a fractured right humerus, traumatic subdural hematoma, seizures and developed sepsis (NYSCEF 35, p.5). Plaintiff has no memory of the accident. His last memory before the accident was receiving physical therapy and undergoing dialysis. Plaintiff learned about the accident when he woke up in an emergency room with pain in his shoulder. The doctor informed him that he fell and

[* 2]

broke his shoulder. Later, plaintiff learned from other hospital personnel that he fell out of bed. (NYSCEF 36 [pp.125-131], Tr. pp.124-130).

**Expert Evidence**

Defendant submits the expert affirmation of Lawrence Diamond, M.D., an attending physician at the facility. A curriculum vitae was not provided. The doctor states that he is Board Certified in Family and Geriatric Medicine. Based on his review of various documents, including the accident report and plaintiff's medical history and records, the doctor states that during a visual check at 1:00 A.M., plaintiff was observed in his bed. However, at 1:10 A.M. during rounds, plaintiff was found lying on the floor. The doctor opines with reasonable degree of medical certainty that,

> ...throughout plaintiff's admission to Peninsula, defendant properly acknowledged and took into consideration plaintiff's multiple co-morbid conditions when developing and implementing the various care plans, which addressed him for falls. At no point did the conduct of Peninsula violate the Public Health Law § 2801-d or violate any other statute nor was there any conduct that would amount to gross negligence or would warrant punitive damages
>
> Specifically, Peninsula properly assessed the plaintiff's condition including his fall risk on admission as well as his risk of altered endocrine/metabolic status, risk of hyperglycemia and hypoglycemia.
> (NYSCEF 32, ¶¶24-25).

In opposition, plaintiff submits the affirmation, with a curriculum vitae, of Kenneth Steier, D.O. According to his curriculum vitae, the doctor holds multiple degrees, including but not limited to Geriartric Healthcare, and Healthcare Management. The doctor has also served as the Medical Director of hospital and nursing facilities. Based on his review of plaintiff's medical records, the doctor opines with a reasonable

[*3]

degree of medical certainty that defendant failed to properly acknowledge and consider plaintiff's multiple medical conditions, and more specifically, the reason he was admitted to the hospital and defendant's facility. Therefore, the fall risk plan was not individualized with necessary interventions. It is the doctor's opinion that plaintiff should have been provided with a low bed, bed alarm, bed rail and floor mats. The doctor also points out discrepancies and missing information in plaintiff's medical records. (NYSCEF 49, ¶¶31-34).

## Applicable Law

### a) Summary Judgment

When deciding a summary judgment motion, the Court's role is solely to identify the existence of triable issues, not to determine the merits of any such issues (*Vega v. Restani Construction Corp.*, 18 NY3d 499, 505 [2012]) or the credibility of the movant's version of events (see *Xiang Fu He v. Troon Management, Inc.*, 34 NY3d 167, 175 [2019] [internal citations omitted]). The Court views the evidence in the light most favorable to the nonmoving party, affording the nonmoving party the benefit of all reasonable inferences that can be drawn from the evidence (*see Negri v. Shop & Stop, Inc.*, 65 NY2d 625, 626 [1985]).

The motion should be denied where the facts are in dispute, where different inferences may be drawn from the evidence, or where the credibility of the witnesses is in question (*see Cameron v. City of Long Beach*, 297 AD2d 773, 774 [2d Dept. 2002]). Likewise, where the parties' experts disagree, the Court cannot resolve questions of fact or the

[* 4]

experts' credibility upon a motion for summary judgment (*Perl v. Meher*, 18 NY3d 208, 217 [2011]; *Rappaport v Sear Roebuck*, 28 AD3d 449 [2d Dept. 1992]).

### b) Public Health Law

Upon a finding that a patient was injured as the result of a deprivation of a right or benefit, compensatory damages *shall* be assessed (Public Health Law § 2801-d [2] [emphasis added]). To avoid liability, facility must demonstrate that it exercised "all care reasonably necessary to prevent and limit the deprivation and injury to the patient" (*id.*). If the deprivation is found to be "willful or in reckless disregard of the lawful rights of the patient, punitive damages may be assessed" (*id.*).

Under common law, the standard for imposing punitive damages in a medical malpractice action is whether defendant manifested evil or malicious conduct beyond any breach of professional duty. Such deviation has also been defined as spite, malice, a fraudulent or evil motive, or a conscious and deliberate disregard of others constituting willful or wanton conduct (*Dupree v Giugliano*, 20 NY3d 921, 924 [2012]). This intentional standard does not apply to claims under Public Health Law § 2801-d [2].

Under Public Health Law § 2801-d, the basis for imposing liability is " neither deviation from accepted standards of medical practice nor breach of a duty of care. Rather, it contemplates injury to the patient caused by the deprivation of a right conferred by contract, statute, regulation, code or rule (*Deitch v Sands Point Ctr. for Health & Rehabilitation*, 237 AD3d 1043 [2d Dept 2025] [italics added] [internal citations omitted]). Therefore, applying an intentional malicious and wanton standard of conduct for the basis of liability is inappropriate because the Court is bound by the plain wording

of Public Health Law § 2801-d [2] that imposes liability under a gross negligence standard of care, which is defined as "conduct that could be viewed as so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others" (*Vissichelli v Glen-Haven Residential Health Care Facility, Inc.*, 136 AD3d 1021, 1023 [2d Dept 2016]).

## Analysis

Applying the gross negligence standard, defendant established a *prima facie* entitlement to summary judgment dismissing plaintiff's Public Health Law § 2801-d [2] and [6] claims. Dr. Diamond, based on plaintiff's medical records, established that an assessment was performed and care plan, that included a fall risk plan, was created for plaintiff. Plaintiff failed to rebut this *prima facie* showing and demonstrate the existence of a trial issue of fact as to the Public Health Law claims (*Van DeVeerdonk v North Westchester Restorative Therapy & Nursing Ctr.*, 223 AD3d 702, 705 [2d Dept 2024]).

The Court expresses no opinion as to whether defendant was negligent in the assessment and creation of the care and fall risk plans as defendant's motion was limited solely to the Public Health Law claims. Therefore, the deviations in care articulated by plaintiff's expert may constitute negligence and must be determined by a jury.[1]

Accordingly, it is hereby

ORDERED that defendant's motion for an order pursuant to CPLR § 3212 granting summary judgment and dismissing only plaintiff's claims under Public Health Law

---

[1] Contrary to defendant's argument, plaintiff's expert has education and experience with nursing homes (see Curriculum Vitae, NYSCEF 49, pp.15-24). The question of whether this witness can be qualified as an expert witness at trial is referred to the trial court.

[* 6]

§ 2801-d [2] and [6] are dismissed and the Clerk shall enter judgment accordingly, and it is further

 ORDERED that defendant shall settle a Judgment on Notice, and it is further

 ORDERED that this action shall proceed to trial on plaintiff's remaining claims.

 The Court has considered the parties' remaining arguments and finds same to be without merit.

 This constitutes the decision and order of the Court.

ENTER

Hon. Anne J. Swern, J.S.C.
Dated: 6/26/2024

For Clerks use only:

MG _____

MD _____

Motion seq. # _____